KISSAM AND HAZARD, EXECUTORS OF HAZARD, DECEASED,
v. BURRALL.

ERROR from the Court of Common Pleas.   The plaintiffs
brought their action of debt, counting upon a bond for £1,950
current money of New York, given by the defendant to the
deceased, bearing date the 10th day of June, A. D. 1761.

Issue was joined, on a plea of full payment; and the de-
fendant, in support of the issue, exhibited evidence of sundry
payments, to the amount of £2,605 11s. 8d. made between
the 9th day of December, 1761, and December, 1783:   Also,
ten accounts, from some of the principal merchants in New
York, and elsewhere, in which the interest was computed and
settled in the following manner, viz.— First casting the in-
terest on the bond or account to the time of settlement, add
the principal and interest together — then computing the in-
terest on the several payments, from the time they were made
to the time of settlement, and deduct the aggregate of pay-
ments and interest from the sum of debt and interest.— The
merchants from whom these accounts came, testified that the
interest was computed agreeably to the custom of merchants
in New York.— The defendant also produced the testimony
of sundry reputable merchants in the country, to the same
effect, whose trade had been with the merchants in New
York; and further, that they knew no difference in comput-
ing interest on bonds and accounts.— The defendant pro-
duced an account settled in the year 1773, with one of the
plaintiffs, in which interest was computed in the manner
above mentioned:— Also the testimony of Jonathan Burrall,
that previous to the late war, he saw Hazard several times

Kissam et al. v. Burrall.

with the defendant; and in a conversation heard him tell the defendant, that he had made several computations on the bond now in suit, but none of them suited him: That he found little or nothing due, and that the defendant need not give himself any trouble about it: That the defendant then proposed to settle the bond, according to the rule of computation practiced by the Superior Court; and that Hazard agreed to the proposal, acknowledging it to be fair:— That the defendant afterwards applied to the clerk of the Superior Court for the rule by which he made a computation, and found there was about £18 York money, due, and he afterwards paid it:— That about eight years after this conversation and agreement, Mr. Hazard presented the defendant a statement of the bond, by which a balance of about £1,200 appeared to be due. The defendant objected; but Mr. Hazard replied, that the other heirs insisted that the interest should be computed in that manner.

The defendant further exhibited a certificate from George Wyllys, Esq. clerk of the Court of Common Pleas, in the county of Hartford, that the general mode of casting interest on bonds or notes, whereon judgment has been rendered by the Court of Common Pleas, in the county of Hartford, for thirty years last past, had been, to compute the interest of the principal sum to the first day of the sitting of the court at which the action was commenced; and when payments had been made at different periods of time, to cast the interest on the several payments, from the time they were made to the first day of the court; add the payments, with their interest, and subtract the whole from the principal sum and its interest.—Also, a certificate from George Pitkin, Esq.

Kissam et al. v. Burrall.

clerk of the Superior Court, that from the year 1757, until about the year 1774 or 1775, the rule of computing interest was, to cast the interest from the date of the note or bond to the time of the first payment, place it in a side column, then subtract the payment from the principal, and cast the interest on the remaining principal to the next payment, and so on to the time of judgment; then add the interest in the side column to what remains.

## EXAMPLE.

| | | | | |
|---|---|---|---|---|
| Bond for £150, dated 1st June, 1780 .... .... £150 | 0 | 0 | *Side column.* | |
| 1782, June 1st, payment 30 | 0 | 0 | Two years' interest...... £18   0   0 | |
| | | | Ditto..................... 14   16   0 | |
| £120 | 0 | 0 | | |
| 1784, June 1st, payment 30 | 0 | 0 | £32   16   0 | |
| 1785, June 1st, judgment rendered...... £90 | 0 | 0 | | |
| Interest from June, 1784, to June, 1785.... 5 | 8 | 0 | | |
| Interest from side column .............. 32 | 16 | 0 | | |
| £128 | 4 | 0 | | |

That from the year 1774 or 1775, the court ordered the interest to be computed from the date of the note or bond, to the time of the judgment; and the interest upon the payments, from the time they were made, in like manner, and rendered judgment for the balance.— So was the practice till the session of court in New London county, March Term, 1784, when the court established a different rule, and ordered the same to be entered on record.— (See page 49.)

The plaintiffs demurred to this evidence — and the Court of Common Pleas gave judgment for the defendant.— The only question made in the cause, respected the mode of com-

Kissam et al. v. Burrall.

puting interest; and the exception taken to the judgment of the Court of Common Pleas, was, that the decision directly contradicted the rule established by the Superior Court, in the year 1784, for computing interest on bonds where payments have been made.

The cause was argued in this court, by Mr. Tracy and Mr. Reeve, for the plaintiffs in error; and by Mr. Strong and Mr. Adams, for the defendant.

Mr. Tracy.— The ground of controversy in this case, is — whether the rule for computing interest, adopted by the Superior Court in 1784,* or those in use before that time, shall be the basis of this adjudication; for if the existing rule of the Superior Court be adopted, a large sum is due to the plaintiffs; but computing by the previous rules, a considerable sum more than the debt has been paid by the defendant.

This being the matter in dispute, it occurs to the mind, with force, that the rule or mode of computing interest, which will give the plaintiffs the lawful interest, ought to be adopted.— Upon the strictest attention to the rule adopted in 1784, it will be found, that all calculations made upon that rule will produce the lawful interest simply, and never exceed that, by accumulated or compound interest: But by a computation on any one of the principles urged by the defendant, the bond in suit will not be productive of lawful interest, and many years of its existence, not three per cent.— These different modes of computing interest, then, ought to be considered as so many attempts to come at a just mode of giving a holder of a bond on interest his due; and if at one period or another, the attempt failed of the wished for success, it could form no rule, until a just mode was hit upon,

*See the rule at large, *ante*, 49.

and then an adoption of that rule could not be called, with propriety, a new rule; because, it was always the rule meant to be practiced, and those modes of the Superior Court, now called the ancient rules of casting interest, had no more force ever, and certainly cannot now be supposed to have had any more force, than any mistaken idea whatever; and as well might the idea, that it is contrary to the word of God to allow any interest to be taken on the loan of money, be offered as a rule, wholly to supersede the statute, which expressly allows interest to be taken, as any other mode or rule of computing interest; which does not, in fact, give the plaintiff his legal ratio of interest.— The statute allowing a certain rate of interest to be received by a creditor from a debtor, had all its binding force in operation upon the defendant, and no evasion can prevent the benefits of that statute applying to the plaintiffs in this case.—Why were the adjudications of this honorable court uniformly against substantiating tenders of continental money for the payment of hard money contracts? — Did not all men generally believe, when those tenders were made, that continental money would be made good, as it was then termed?—The manifest reason was, that the idea of paying debts by those tenders was unjust, and a mistake; because, in fact, it did not make payment, and did not fulfill the contract; yet the party tendering it might be honest, and might verily believe the money would be made good, which would have really, had it happened, discharged the promise and contract he had made.— In this case, the defendant might suppose he had fulfilled his contract; but he calculated upon mistaken ground; and when a rule of calculation is discovered, which will clearly fulfill his contract, and his mistake is detected, it is immoral to pre-

Kissam et al. v. Burrall.

tend he ought not to fulfill his promise, because his creditor was mistaken too — and so was the Superior Court for a number of years.

The demurrer to the evidence in this case, admits no more than this — Many persons have mistook the right way of computing interest; but can a mistaken payment, or receipt of money, cancel an obligation? If not, can a mistake in casting interest cancel a written engagement in such manner as that an express statute shall lose its operation?

Mr. Strong, for the defendant.— The only question is, whether, upon the face of the record there appears to have been full payment made.— The determination of this question will depend upon the application of the payments, whether to the principal or interest of the bond. No express application was made by the parties at the time of payment; but it remains now to be done, agreeably to the rules and usages by which similar transactions were then governed. There is no presumption that the parties contemplated any other rule or usage than such as at that time existed.— The contract was made, and every transaction consequent upon it, took place antecedent to the rule established by this court in the year 1784; that rule, therefore, cannot affect the case. So are the principles laid down by this court, in the case of Hinsdale v. Hinsdale, appeal from probate. It was there adjudged, that the estate should descend according as the law stood when the descent was cast.

The lawful rate of interest in this state, is six per cent. Why then do the courts allow seven per cent. upon contracts made in the state of New York? — It is because that is the lawful rate of interest there, and the rate of interest which the contracting parties are presumed to have had in con-

templation, at the time of the contract, and their intention is to be pursued.— The same presumption arises, respecting the mode of computing the interest; and the court will regard the one as well as the other.— It is clear, from the evidence stated, that at the time the bond was given, and the payments made, the practice, both in the state of New York and in this state, was, to compute interest in the mode contended for by the defendant: — In the case of Phenix v. Prindle, *ante* 207, it was adjudged, that the contract should be governed by the custom of the merchants where it was made;— so interest was recovered contrary to the laws of this state, in an action of book debt, contracted in New York, and on the ground, that the presumption was, the parties intended it should be paid.

Mr. Adams, on the same side.— It will be agreed, that by either of the rules for computing interest, in practice by this court, antecedent to the year 1784, the bond is fully paid. Whether much or little be overpaid, is out of the case. That contracts are to be governed by the laws in existence at the time and place where they are made, will not be denied:— The question then is,— whether a rule of the Superior Court be a law; for when a law is repealed, or altered, it supposes the old law not to be so good as the new law.— Here are two rules:— The first has existed time immemorial, and is supported by a long course of adjudications;— the latter is an express and positive rule, adopted upon full deliberation.—They are of equal authority, and are both to be regarded as law. The common law is settled and known by the adjudications of the high courts of the state.— This principle being established, it will follow, that the contract, in this case, and the transactions consequent upon it,

must be governed by the rules and practices of the Superior Court, antecedent to the year 1784; which rules are the same as was practiced by the merchants where the contract was made.    The parties could have no other law or rule in contemplation; and to subject them to a subsequent rule, of a different nature, would make their contract different from the original intention of the contracting parties.    By the law, as it then stood, the contract was fully performed; but by an *ex post facto* law, it is again opened, and left un-fulfilled.—Whether it be true, that the last rule of the court ought to have been sooner adopted or not, is immaterial to this case; for the parties were to govern themselves by the law as it then stood.    Could they have known, that they should be subject to this rule, their conduct would, undoubt-edly, have been different.— The case of Phenix v. Prindle, will apply with force: — There the court said, the contract must be subject to the control of the laws under which it was made, although they were different from the law of this state; because, the intention and understanding of the par-ties is supposed to have reference to that, and no other.

It has been urged, on the other side — that the practice of the merchants and court, stated in the evidence, is ab-surd; for that payment of a sum, beyond the sum of the principal, will, by a greater increase of interest, operate to destroy the whole debt, and finally bring the creditor in debt: But this reasoning is not just; for the accumulation of in-terest upon the payments can go no further, than till the payment is made, which cancels the bond.

Mr. Reeve, for the plaintiffs in error.— The whole will ultimately resolve itself to this — What is the right rule of

computing interest? The plaintiffs have adopted the rule made by the court in the year 1784; not because the court are to be considered in a legislative capacity, or as having any right to alter the law, but that the rule last adopted by the court is only declarative of what the law is and was.— There is a positive law existing, which determines the rate of interest in this case to be seven per cent. What will be the amount of seven per cent. depends merely upon calculation;— how that calculation shall be made, depends on the rules adopted by the Superior Court;— for there can be but one true rule; and if the court have ever gone on a false ground, it cannot acquire the force of law by long usage.— Therefore, the true rule is the only rule which can govern this contract, notwithstanding any practices which may by mistake have taken place. Examine the two rules contended for: —A bond is given for £100 on interest, at six per cent. at the end of two years, when £112 is due, £105 is paid. By the rule contended for, on the part of the defendant, at the end of twenty years the bond would be satisfied, without the payment of another farthing.— This cannot be the true rule.— By the rule contended for on the part of the plaintiffs, the creditor will receive his interest annually, if payments to that amount are made, which is agreeable to the spirit of the statute regulating the rate of interest; and upon that ground the payment is supposed to be applied to the discharge of interest due, and the residue to the principal; for the law expressly refers to annual interest.— By the other rule, let seven per cent. be annually paid, and at the end of fourteen years the principal will be discharged;— the creditor, therefore, does not get seven per cent. interest.

The rule I contend for, does not admit interest to accumulate upon interest.— The concluding clause of the rule is — " That if any payments be made, of a less sum than the interest arisen at the time of such payment, no interest is to be computed but only on the principal sum, for any period."— So that whenever the payment is insufficient to absorb the interest then due, the next calculation of interest is to be upon the principal sum only; — therefore, the rule is settled upon the most consistent and permanent principles.

And the court agreed, that the rule was to be thus understood.

This being a cause of considerable importance, the court directed it to lie for further argument; and afterwards, in the same term, it was again argued by the same counsel as before.

Mr. Tracy.—When payments are made upon a contract carrying interest, without an express application to the principal, the presumption is, that they were intended to be applied to the interest. This idea is strongly corroborated by the conduct of the parties in the present case: For if the payments are not to be thus applied, the defendant, at the time of the last payment, had exceeded the sum recoverable by the bond, to the amount of £366 1s. 1d. This is a practical contradiction of the principles now contended for by the defendant, and destroys the presumption (arising from the custom of the merchants in New York) that the parties impliedly agreed to apply the payments and compute the interest in that manner.— The rule contended for by the plaintiffs, allows no interest to accumulate upon interest, but pursues up the original contract, and gives the creditor his seven

. per cent. interest, and no more. It cannot, therefore, be intended that the parties had a mode of calculation in view, which would essentially vary the express tenor of the contract.

Mr. Strong, on the other side, again enforced the substance of his first argument.

Mr. Adams, on the same side.— A bond is given for £100 payable at the end of one year, with interest. In that case, the principal is as much promised at the end of the year as the interest, and there is no preference given by the terms of the contract; therefore, no presumption can arise, that interest is to be first paid. In regard to the mode of computing interest; which of the two rules contended for is most righteous, is wholly out of the case. It may be a political question, that will be forever litigated, and remain forever uncertain.— Here is a bond, which, according to the usage of the place where it was given, and the practice of the courts where it was put in suit, at the time of the transaction, was fully paid and satisfied; but by a rule afterwards adopted, it is unpaid.— By which of those rules shall the case be governed? Shall the subsequent rule affect contracts carried into execution? Clearly, it cannot.

Mr. Reeve, for the plaintiffs:— If the question came up, stripped of the circumstances attending this case, it would depend merely upon a calculation of figures: It would be, what will give the creditor his seven per cent. interest. The latter rule will do it perfectly, and the former does not.— Notwithstanding the circumstances of this case, can the court assume the office of legislators, and say, that seven per cent. shall produce no more than three and an half? Or shall they perform the proper duties of their office, and adjudge,

that the plaintiffs recover the product of seven per cent. agreeably to the contract? — It is clear, that the creditor intended to have taken seven per cent. and there is no ground to suppose an understanding or agreement to take less; for the law gave him that, and the contract was for that.— If the creditor, or any other person, have adopted a mode of computation which gives less than the contract, it is a mistake, and not evidence of an agreement to receive less. When he applied to a court of justice, to compel performance of the contract, will the court admit a palpable mistake to be introduced, which alters the nature of the contract? — The court will, undoubtedly, adjudge, that the contract shall be pursued up, and what the law allows be given.—As to the application of payments; the law will clearly apply them to the interest first, where no application is made by the parties; — otherwise, seven per cent. for one year is usurious, and the law is not consistent with itself.— If seven per cent. is the lawful rate of interest, the law will so apply the payment as to give that sum to the creditor.

Judgment of the Court of Common Pleas affirmed.

By the COURT. (DYER, J., absent.) The only question in law, made by the counsel, respects the mode of computing interest, there having been a number of payments at different times:— But the declaration counts upon a bond given for the payment of £1,950 New York money; and it does not appear by the declaration, or pleadings, that the bond had any condition annexed, or that the obligation was on interest; and it appears that the payments exceed the sum of the obligation; — therefore, on that principle alone, the evidence, as stated, was sufficient to prove the issue.

But there was, in fact, a condition annexed to the bond, for the payment of half the sum mentioned in the obligation, with lawful interest, by a day certain.  This brings up the question in dispute between the parties; and the determination depends upon the application of the payments.  If the payments had been applied to the interest due at the time they were made, and only the surplus to the principal, there would have remained a considerable sum due to the plaintiffs; but if all the payments had been applied to the principal, until that was fully discharged, and the residue to the interest, the debt would have been overpaid.  It is a settled rule of law, that he who pays money has a right to direct the application, if there are several duties to which it may be applied; but if he neglects to do it, the receiver may make his election.  In this case, there does not appear to have been any particular application made by either party, but the sums paid were simply indorsed on the bond.— Therefore, the intention of the parties must be inferred from the common custom of the place where the contract and payments were made, and their own conduct respecting the matter:—This being transacted in the city of New York, must be governed by the laws and customs of that state; and according to what appears from the evidence to have been the custom of computing interest in New York, the bond is overpaid.  But as the parties might have agreed to apply some of the payments to the interest due at the time they were made, before the principal was fully paid, it is presumed to be the case; for it was both equitable and legal.— On these principles, and from the length of time since the money became due, arises a strong presumption, that there hath been a

settlement of the matter in demand agreeably to the minds of the parties.

Judgment was, therefore, affirmed.